UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VITALLIANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>I+SOLUTIONS, a Dutch company,<br><br>Defendant. | CASE NO. 3:20-CV-00002<br><br><br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT and REQUESTS FOR INJUNCTIONS**

Plaintiff Vitalliance Corporation ("Vitalliance" or "Plaintiff"), complains of Defendant i+solutions ("i+solutions" or "Defendant") and alleges as follows:

**I. INTRODUCTION**

1.1   This matter concerns numerous breaches of contract, quantum meruit, copyright infringement, patent infringement, and trade secret, trademark, and trade dress infringement, by Defendant i+solutions against Vitalliance,

1.2   Vitalliance brings this lawsuit to secure relief under Federal and Texas state laws. Vitalliance seeks: (a) money damages, attorneys' fees, and costs for Defendant's breach of a Teaming Agreement with Vitalliance, and for past and continuing misuse/infringement of Vitalliance's License to protected software of One Network Enterprises ("ONE"); (b) recovery in quantum meruit for additional services rendered by Vitalliance at Defendant's express request; (c) injunctions prohibiting Defendant from any further infringement of Vitalliance's proprietary and confidential software and technology pursuant to a License; and (d) an order requiring the immediate return and discontinuance of use of the protected software and any associated materials,

and the transfer of any domain names owned, claimed, or controlled by Defendant incorporating the proprietary and confidential materials, in whole or in part, to Vitalliance.

## II. THE PARTIES

2.1     Plaintiff Vitalliance is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Texas on 4055 Valley View Lane, Suite 1000, Dallas, Texas. Vitalliance is in good standing with the Texas Secretary of State and has done all things necessary and proper to bring this lawsuit.

2.2     Based on information and belief, Defendant i+solutions is a Dutch organization, with its headquarters and principal place of business in the Netherlands located at Polanerbaan 11, 3447 GN, Woerden, The Netherlands. It may be served with process by certified mail, pursuant to Article 10(a) of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), to E. A. Monchen, CEO, i+solutions, Polanerbaan 11, 3447 GN Woerden, The Netherlands.

## III. JURISDICTION AND VENUE

3.1     This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a)(2). Defendant is a foreign business entity headquartered in The Netherlands, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.2     This court has jurisdiction over the copyright infringement action pursuant to 28 U.S.C. §§ 1331, 1332(a) and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367. This Court has original jurisdiction under 15 U.S.C. §1121(a) (action arising under the Lanham Act) and 28 U.S.C. §§1331, 1338(a) (federal question) in that this case arises under the Copyright, Patent, Trade Secret, Trademark and Trade Dress Laws of the United States, as well as under the related Texas state laws.

3.3     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(c) because, Defendant is a business entity with purposeful contacts in Texas that are sufficient to subject it to personal jurisdiction.  Defendant is a multinational business entity doing business globally in multiple continents around the world and has directed activities in the State of Texas, and more particularly within the jurisdictional boundaries of the United States District Court for the Northern District of Texas.  At all times relevant herein, Defendant's representatives and/or agents traveled in and out of the State of Texas, directed the activities of Defendant in Dallas County, Texas, and conducted business activities within the jurisdictional boundaries of this judicial district.

## IV. FACTUAL BACKGROUND

4.1     On or about July 24, 2018, Defendant i+solutions invited Vitalliance to join forces with Defendant to bid on a solicitation for bids issued by the Global Fund ("TGF"). The bid would involve pooling together their complementary talents and capabilities to provide a bid as a team in response to the TGF solicitation.  Defendant especially desired access to the supply chain management solutions software designed and owned by One Network Enterprises ("ONE"), that are incorporated by Vitalliance through a license in its solutions and to which Vitalliance has access through its own agreements.  Plaintiff and Defendant specifically identified the ONE software and Vitalliance's access to it as a primary need in the solicitation for bids from TGF, and a primary reason i+solutions wanted to team with Vitalliance in this particular bid to TGF.

4.2     ONE holds the following patents on its software (to which Vitalliance hold the foregoing license): (a) patent number 8,086,588 ("the 588 Patent"), entitled COMPUTER PROGRAM PRODUCT AND METHOD FOR SHARING INFORMATION BETWEEN MULTIPLE COMPUTER APPLICATIONS USING A GRAFTED MODEL NETWORK, which was duly and legally issued on 12/27/2011; (b) patent number 7,739,121 ("the 121 Patent"),

entitled METHOD AND APPARATUS FOR PROVIDING INTELLIGENT AND CONTROLLED ACCESS TO SUPPLY CHAIN INFORMATION, which was duly and legally issued on 06/15/2010; (c) patent number 8,392,228 ("the 228 Patent"), entitled COMPUTER PROGRAM PRODUCT AND METHOD FOR SALES FORECASTING AND ADJUSTING A SALES FORECAST, which was duly and legally issued on 03/05/2013; (d) patent number 8,352,300 ("the 300 Patent"), entitled CIP 1000, 1001 & 1004: SYSTEM, COMPUTER PROGRAM AND METHOD FOR IMPLEMENTING AND MANAGING A VALUE CHAIN NETWORK, which was duly and legally issued on 01/08/2013; (e) patent number 10,311,455 ("the 455 Patent"), entitled CONT 1004; CIP 1000, 1001 & 1005: COMPUTER PROGRAM PRODUCT AND METHOD FOR SALES FORECASTING AND ADJUSTING A SALES FORECAST, which was duly and legally issued on 06/04/2019; and (f) patent number 10,049,340 ("the 340 Patent"), entitled CIP 1001, 1004 & 1007: SYSTEM AND COMPUTER PROGRAM FOR A GLOBAL TRANSACTION MANAGER IN A FEDERATED VALUE CHAIN NETWORK, which was duly and legally issued on 08/14/2018. Vitalliance is a licensee of the entire right, title, and interest in the associated Patents, and specifically used and relied upon the license from ONE at all times material herein.

4.3     On or about August 30, 2018, Defendant, i+Solutions, and Vitalliance entered into a Teaming Agreement (the "TA") to present a bid on TGF's solicitation for its Pooled Procurement Mechanism ("PPM") project. The bid would include a demonstration of the software solutions available through Vitalliance to show the capabilities of the software.

4.4     Vitalliance spent considerable resources to previously obtain and retain access to the ONE software and proprietary and confidential materials and has legal obligations to secure

and protect the software from unauthorized use or misuse. Those obligations are recognized in the TA and a non-disclosure agreement ("NDA") that was incorporated into the TA.

4.5     Consequently, the software is a very important and valuable business asset of Vitalliance and represents significant business goodwill. Thus, in order to protect it and Vitalliance's other intellectual property, Vitalliance and Defendant entered into a separate non-disclosure agreement (the "NDA") which the parties, by reference, made a part of their Teaming Agreement. See Teaming Agreement Articles 1.2, 5, 6, and 7. Moreover, the parties specifically agreed that 1) any information protected under the security laws of any country related to protection of proprietary and confidential information shall apply, 2) each party has and shall retain exclusive ownership of and rights to all software and software products, including enhancements, customizations, and modification, developed by that party which will be used in the Project, and 3) any inventions, discoveries, and improvements conceived or reduced to practice by one of the parties shall be the sole property of the party whose employee or employees made the invention, discovery, or improvement, recognizing protection of all rights under patents, copyright, trade secrets, or other intellectual property rights. Teaming Agreement Articles 5, 6, and 7.

4.6     Subsequently, Vitalliance furnished to Defendant all the pertinent information and materials required for its part of the TGF bid under the TA, including technical, management, and price information to enable Defendant to submit the bid on behalf of the team.

4.7     Accompanying the bid deliverables furnished by Vitalliance to Defendant was the pre-work necessary to demonstrate the capabilities of the software Vitalliance would be providing to TGF at the final selection workshops, deliverables as identified in the Statement of Work ("SOW") agreed to by Defendant and Vitalliance on December 18, 2018, on assumption that the TGF contract would be awarded to the Team, along with other confidential and proprietary

information belonging to and held by Vitalliance and protected under various security laws and intellectual property laws.

4.8    Shortly after the bid was presented to TGF, but prior to the award of the PPM contract by TGF, Defendant informed Vitalliance to begin project planning and to prepare for implementation of the PPM. This was outside of the TA and in addition to Vitalliance's obligations and duties under the Teaming Agreement.

4.9    Thus, on Defendant's direction, around the middle of February 2019 through the middle of June 2019, Vitalliance embarked on implementation exercises to begin preliminary execution of performance of the work for which it would be responsible once TGF awarded the contract to the Team.

4.10   On the basis of the bid prepared in conjunction with the Teaming Agreement between i+solutions and Vitalliance, TGF awarded the contract to Defendant on April 3, 2019. Once TGF awarded the contract to Defendant, the Teaming Agreement required that the parties promptly enter into "negotiations, in good faith, to reach agreement with respect to the terms and conditions of a renewal subcontract (hereinafter "Subcontract")," which was to contain all terms and conditions necessary to implement the contract awarded by TGF to i+solutions in conjunction with the Teaming Agreement. See Teaming Agreement Article 4. The terms of the Teaming Agreement specifically and repeatedly call for "good faith negotiations" and "actions taken in good faith" by both parties to both submit their original bid to TGF, and to reach a mutually agreeable Subcontract after the Project was awarded by TGF to the team.

4.11   The scope of the Project awarded to the team by TGF was slightly altered from the original Project's scope, and i+solutions agreed to accept that altered Project scope from TGF.

4.12     On or about April 24, 2019, senior personnel of Defendant i+solutions and Vitalliance held a conference call to discuss the status of preliminary execution and implementation work performed by both companies, terms of the Subcontract, and Defendant's attempt to include other clients under the contract that was completely outside of any original scope of the TA.

4.13     On or about May 24, 2019, in conjunction with the negotiation of the Subcontract required under the TA, and the additional desires of Defendant addressed above, Defendant i+solutions offered to Vitalliance a license structure model of pricing reflecting a $35,000 per month fee with a one-time $500,000 implementation fee to perform Vitalliance's portion of the services under the awarded TGF Project. Vitalliance accepted that offer.

4.14     Nevertheless, in a very distressing move, after numerous meetings and email exchanges, Defendant unilaterally withdrew that previously accepted offer in June, 2019, leaving the parties without agreement, and in violation of the terms of the TA requiring good faith negotiation to reach an acceptable Subcontract.

4.15     Hoping to mitigate its damages and preserve the relationship for future opportunities, on or about June 15, 2019, Vitalliance voluntarily lowered the price for the portion of its services on the TGF awarded contract with Defendant's additional demands from the original scope of work, to $35,000 per month in fees and a $400,000 one-time implementation fee as an offer to Defendant.

4.16     In response, on June 16, 2019, Defendant rejected the reduced price offer made by Vitalliance, and instead offered to Vitalliance an alarming $10,000 per month and a future share in the proceeds, knowing that such an offer did not and would not cover the cost to Vitalliance for providing access to the software and performing its other related services.

4.17   In yet another disturbing violation of the terms of the Teaming Agreement and in violation of United States and Texas copyright, trade secret, trade mark, trade dress, and patent laws, and in a blatant show of lack of any good faith and fair dealing, on July 11, 2019, at the Health and Humanitarian Logistics Conference held in Rwanda, Defendant i+solutions breached the Teaming Agreement and copyright, trade secret, trade mark, trade dress, and patent laws when it *used and represented as its own* the proprietary and confidential information subject to the Teaming Agreement in a conference presentation given by Defendant.  Specifically, Defendant i+solutions projected onto a public screen at the conference images of the software applications and technology directly subject to protection under the TA, and **represented that the applications and technology were its own property and creations**.  It was later verified to be the exact proprietary and confidential material that was subject to multiple protections under the Teaming Agreement.  This presentation was coincidentally attended by a Vitalliance employee who recognized the proprietary and confidential information immediately.

4.18   All conditions precedent under the Teaming Agreement have occurred or been performed.

### V. CAUSES OF ACTION

*Breach of Contract*

5.1   Vitalliance realleges and incorporates herein by reference the allegations contained in all preceding paragraphs of this Complaint as part of these causes of action.

5.2   The TA, and NDA incorporated into the TA, is a valid agreement entered into by and between Vitalliance and the Defendant.  All conditions precedent under the agreement have occurred or been performed.

5.3     Pursuant to the TA, and for good and valuable consideration, including but not limited to, the performance by Vitalliance of the pre-work necessary to demonstrate the capabilities of the applications to which it would be providing access, Defendant agreed to negotiate in good faith to reach an agreement with respect to the terms and conditions of a Subcontract upon the successful acceptance of the bid to TGF and subsequent award of a contract by TGF, which includes the performance of the work for which Vitalliance is responsible under the TA.

5.4     Upon winning the contract, in conjunction with negotiating the Subcontract as required under the TA, Defendant offered to Vitalliance a price of a $35,000 per month licensing fee with a one-time implementation fee of $500,000.00, on or about May 24, 2019, which Vitalliance accepted, and which reflected the altered scope of the original project awarded by the TGF as well as Defendant's additional demands that were not part of the original scope of the Teaming Agreement and TGF's project

5.5     In a move that underscored Defendant i+solutions' bad faith in negotiating the Subcontract and a blatant breach of the TA, in June it flat out repudiated its original pricing offer that had already been accepted by Vitalliance, and it unilaterally withdrew its May 24th offer that had already been accepted by Vitalliance.

5.6     To mitigate its damages and to enter into the Subcontract, and preserve the relationship for future opportunities, on or about June 15, 2019, Vitalliance then voluntarily lowered the price for its portion of the services on the PPM project under the TGF awarded contract. Vitalliance reduced its pricing to $35,000 per month and a one-time $400,000 implementation fee (which implementation exercises had already begun in February 2019 at

i+solutions' request after the time the bid was submitted to TGF but prior to the time TGF awarded the contract).

5.7   In response, on June 16, 2019, after Defendant withdrew its acceptance of Vitalliance's good faith effort to reach a Subcontract agreement as required under the TA with lowered fees, Defendant instead offered to Vitalliance a disturbingly low fee of $10,000 per month and a future share in the proceeds, without any implementation fees, knowing that such an offer would not and did not cover the cost of access to the required software applications, the proprietary and confidential technology, and the associated services performed by Vitalliance under the PPM.

5.8   In another disturbing violation of the terms of the Teaming Agreement and the NDA, and in a blatant show of lack of any good faith dealing, July 11, 2019, at the Health and Humanitarian Logistics Conference held in Rwanda, i+solutions breached the Teaming Agreement and infringed United States and Texas laws when it used the proprietary and confidential information protected by the TA, and represented the proprietary and confidential information as its own, in a conference presentation given by Defendant's representative. Defendant's use of portions of the protected materials and technology was without Plaintiff's authorization, consent, or knowledge, and without any compensation to Plaintiff; further, Defendant's identical copying, exploitation, use and mis-representations that the protected materials and technology were Defendant's own properties, was willful, and in disregard of, and with indifference to, the rights of Plaintiff under the TA. Defendant's intentional, infringing conduct was undertaken to reap the benefit, value, and goodwill associated with the protected materials and technology for itself. By failing to obtain Plaintiff's authorization to use the protected materials and technology or to compensate Plaintiff for the use, Defendant has avoided payment of license fees and other financial costs associated with obtaining permission to exploit the protected materials, as well as the

restrictions that Plaintiff is entitled to and would place on any such exploitation as conditions for Plaintiff's permission, including the right to deny permission altogether, under the TA and federal and state laws in the United States.

5.9   On July 23, 2019 Plaintiff's counsel sent a cease and desist letter to Defendant objecting to Defendant's unauthorized reproduction, publication, and public display, of the protected materials and technology. To date, Defendant has refused to comply with the demands set out in the cease and desist letter.

5.10   As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized uses of the proprietary and confidential materials and technology. Defendant has never accounted to or otherwise paid Plaintiff for its use of the protected materials and technology.

5.11   Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

5.12   Defendant's failure to negotiate in good faith with Vitalliance to reach an agreement on the terms of a Subcontract as required in the TA constitutes a breach of the TA. Defendant's use of Vitalliance's proprietary and confidential information in the July 11, 2019 conference presentation constitutes an additional breach of the TA. Defendant's demand that Vitalliance begin implementation of its portion of the Project prior to acceptance and awarding of the bid by TGF to the team constituted the creation of an additional oral contract or agreement by i+solutions that was outside of and in addition to the terms of the TA. This request for Vitalliance to do additional work not included in the terms of the TA constituted a promise by i+solutions to pay Vitalliance for all work done by Vitalliance in preparation for implementation in the period between submission of the bid and awarding of the bid by TGF. I+solutions' failure to negotiate

in good faith to reach an agreement on a Subcontract further violated this additional agreement and constitutes a breach of contract and quantum meruit.

5.13   As a result of Defendant's various breaches of written and oral contracts, and improper actions, Vitalliance has suffered and continues to suffer substantial damages.

***Violations of the United States Copyright Act 17 U.S.C. § 101 et seq.***

5.14   Vitalliance realleges and incorporates herein by reference the allegations contained in all preceding paragraphs of this Complaint as part of these causes of action.

5.15   The claims asserted herein arise out of and are based on Defendant's copying, reproduction, and public display of the proprietary and confidential materials and technology subject to the TA without Plaintiff's consent on July 11, 2019 at the Health and Humanitarian Logistics Conference held in Rwanda.  Plaintiff sues for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 et seq.

5.16   Plaintiff seeks all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiff's damages and any profits derived by Defendant from Defendant's willfully infringing conduct, and other monetary relief.

5.17   Through Defendant's conduct alleged herein, including Defendant's copying, reproduction, and public display of portions of the proprietary and confidential materials and technology protected under the TA without Plaintiff's permission, Defendant has directly infringed Plaintiff's rights in the proprietary and confidential materials and technology protected under the TA in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

5.18  Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the protected software and has enabled Defendant illegally to obtain profit and benefit therefrom.

5.19    As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.  Plaintiff is also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein, and an accounting of, and a constructive trust with respect to such profits.  Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), for Defendant's willful infringing conduct, and for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c). Plaintiff further is entitled to its attorneys' fees and costs.

5.20    As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe Plaintiff's rights.  Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

### *Violations of Trade Secret Laws Under Federal and State Laws*

5.21    Vitalliance realleges and incorporates herein by reference the allegations contained in all preceding paragraphs of this Complaint as part of these causes of action.

5.22    The claims asserted herein arise out of and are based on Defendant's misappropriation of Vitalliance's trade secrets, in violation of the Economic Espionage Act (EEA) (18 U.S.C. §§ 1831-1839), significantly amended by the Defend Trade Secrets Act of 2016 (DTSA), and also amended by the Theft of Trade Secrets Clarification Act of 2012, and violations of the Texas Uniform Trade Secrets Act (Tex. Civ. Prac. & Rem. Code § 134A.001 *et seq.).* Defendant's use of Vitalliance's trade secrets (the proprietary and confidential materials and technology protected under the TA) on July 11, 2019 at the Health and Humanitarian Logistics

Conference held in Rwanda was in violation of the contracts at issue, as well as in violation of United States laws and Texas laws.

5.23    Vitalliance has been injured and damaged by Defendant's misappropriation of its trade secrets and seeks injunctive relief through temporary and permanent injunctions, actual damages caused by the loss and unjust enrichment of Defendant, reasonable royalties for the unauthorized disclosure and use of the trade secrets, exemplary damages up to two times the amount of damages for willful and malicious misappropriation, and reasonable attorneys' fees and costs, all permitted under both federal and state laws.

*Violations of Patent Laws and Infringement of Patent Rights*

5.24    Vitalliance realleges and incorporates herein by reference the allegations contained in all preceding paragraphs of this Complaint as part of these causes of action.

5.25    Defendant has been and is infringing the Patents by using the licensed protected proprietary and confidential materials and technology protected under the TA in violation of 35 U.S.C. § 271(a), and Defendant specifically made use of the patented proprietary and confidential materials and technology protected under the TA on July 11, 2019 at the Health and Humanitarian Logistics Conference held in Rwanda.

5.26    Defendant's infringement has been, and on knowledge and belief, continues to be knowing, intentional, and willful.  Defendant's acts of infringement of the Patents have caused and will continue to cause damages for which Vitalliance is entitled to compensation pursuant to 35 U.S.C. § 284.  Moreover, Defendant's acts of infringement of the Patents have caused and will continue to cause Vitalliance immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Vitalliance has no adequate remedy at law.

This case is exceptional and, therefore, Vitalliance is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

*Quantum Meruit*

5.38 Vitalliance re-alleges and incorporates herein by reference the allegations contained in all preceding paragraphs as part of this cause of action.

5.39 Defendant directed Vitalliance to initiate activities necessary to begin performance of Vitalliance's portion of the PPM contract awarded by TGF after submission of the bid to TGF but prior to any acceptance of the bid or award of the contract to the Team.

5.40   Accordingly, Vitalliance mobilized and expended significant resources at the request of Defendant to begin the implementation phase, including completing the design of the solution for implementation, setting up initiation data unique to the Project on the One software platform, and preparing a demonstration environment for review by TGF. Vitalliance also deployed personnel, including technical personnel, which was the subject of a meeting on or about April 24, 2019 between personnel of Vitalliance and i+solutions, as part of implementation of the TGF project.

5.41 The substantial work performed, along with the resources committed by Vitalliance after the submittal of the bid to TGF was at the request and urging of Defendant and not as part of the bid preparation under the TA, but rather in addition to the scope of the Project contemplated under the TA.

5.42 Defendant directed Vitalliance to expend resources in planning for implementation of the Project and made additional demands of Vitalliance that were beyond the scope of the bid preparation under the TA.  Defendant knew, or should have known, that Vitalliance expected to be fully paid for the use of  the proprietary and confidential materials and technology protected

under the TA and for Vitalliance's additional services during this phase of preparing for implementation that was not part of the TA.

5.43   Vitalliance has suffered damages through Defendant i+solutions' bad faith actions and representations, including, but not limited to, the substantial cost and expense expended to prepare for the implementation of TGF project and the additional work demanded by Defendant above and beyond what was required and contemplated under the TA. The sum of these damages exceeds the jurisdictional limits of the Court and will be proven at trial.

5.44 Vitalliance seeks, and is entitled to recover, its actual damages, together with the costs of suit, including reasonable attorneys' fees.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Vitalliance prays for relief against Defendant as follows:

1. Finding that Defendant has breached the contracts at issue;

2. Finding that Defendant is liable to Vitalliance under the theory of quantum meruit;

3. Finding that Defendant violated Vitalliance's copyrights, trade secrets, trademark and trade dress, and patents under both federal and state laws;

4. Granting an injunction enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with Defendant from any use whatsoever of the proprietary and confidential materials and technology protected under the TA;

5. That Defendant be ordered to provide an accounting of Defendant's profits attributable to Defendant's infringing conduct, including Defendant's profits from sales and any other exploitation of the protected software, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the protected software;

6. That Defendant be ordered to destroy or deliver up for destruction all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringing conduct, including without limitation all remaining copies of proprietary and confidential materials and technology protected under the TA and any products and works that embody any reproduction or other copy or colorable imitation of the proprietary and confidential

materials and technology protected under the TA and NDA, as well as all means for manufacturing or duplicating them;

7. That Defendant, at its own expense, be ordered to recall the proprietary and confidential materials and technology protected under the TA from any distributors, retailers, vendors, partners, or others that have distributed the protected proprietary and confidential materials and technology protected under the TA on Defendant's behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the protected proprietary and confidential materials and technology protected under the TA, and that Defendant be ordered to destroy or deliver up for destruction all materials returned to it;

8. For specific performance of the Teaming Agreement;

9. For an award of punitive and exemplary damages in an amount to be proven at trial, but sufficient to punish and deter the Defendant;

10. Awarding Plaintiff:

   a. Defendant's profits obtained as a result of Defendant's infringing conduct, including but not limited to all profits from sales and other exploitation of the protected proprietary and confidential materials and technology protected under the TA and NDA and any products, works, or other materials that include, copy, are derived from, or otherwise embody the protected proprietary and confidential materials and technology protected under the TA, or in the Court's discretion, such amount as the Court finds to be just and proper;

   b. Damages sustained by Plaintiff as a result of Defendant's infringing and breaching conduct, in an amount to be proven at trial;

   c. Statutory damages and any exemplary damages available; and

   d. Plaintiff's reasonable attorneys' fees and costs;

11. Awarding Plaintiff interest, including pre- and post-judgment interest at the highest rate allowed by law, on the foregoing sums; and

12. Awarding such other and further relief as the Court deems just and proper.

DATED this 1st day of January 2020.

>Respectfully submitted,
>
>/s/Clement Osimetha
>CLEMENT OSIMETHA

Texas Bar No. 00794407
GRABLE MARTIN FULTON PLLC
Counsel for Plaintiff
4475 Trinity Mills Road, #701324
Dallas, Texas 75370
Tel: (214) 808-1010
Fax: (877) 259-0092
Email: cosimetha@grablemartin.com

/s/Elizabeth Ardanowski
ELIZABETH ARDANOWSKI
Texas Bar No 00793275
GRABLE MARTIN FULTON PLLC
Counsel for Plaintiff
6120 Swiss Ave., Box 141257
Dallas, Texas 75214
Tel:  469-450-1302
Email:  eardanowski@grablemartin.com